UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRIELYNN HARDER,

    Plaintiff,

v.

SUNRISE SENIOR LIVING, INC., A foreign corporation, and SUNRISE SENIOR LIVING MANAGEMENT, INC., A foreign corporation,

    Defendants.

                                         /

Case No. 2:09-cv-11094

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (docket no. 9)**

This matter comes before the Court upon motion of defendants Sunrise Senior Living, Inc. and Sunrise Senior Living Management, Inc. (collectively "Sunrise") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant Sunrise's motion for judgment on the pleadings as to Counts I, II and III, but will deny Sunrise's motion for judgment on the pleadings as to Count IV.

**FACTS**

Plaintiff Sherrielynn Harder ("Harder") was the Executive Director of Sunrise Senior Living ("Sunrise"), which is an assisted living facility located in Grosse Pointe Woods. Harder began work for Sunrise on February 13, 2006 and was discharged on July 10, 2008. (Compl. 17-18). Sunrise stated the reason for Harder's discharge was 'exercise of poor judgment' for failing to report that an employee improperly administered drugs to a patient. (Id. at 19- 20, 42). Harder contends that she was an exemplary team member and she

was actually fired to prevent her from reporting an incident of impropriety to the State of Michigan.

The events leading up to the discharge began on July 5, 2008 when a nurse under Harder's supervision, Cynthia Jones, dispensed an unauthorized drug (Vicodin) to a resident. (Id. at 21-23, 25-26.) Cynthia Jones told Harder of the incident on July 8, 2008 and on July 9, 2008 Harder reported the incident to her supervisors, Steven Tishka and Shirley Shockley. (Id. at 27.) On July 10, 2008, Harder was discharged for "exercising poor judgment" in failing to report the unauthorized dispensing of a drug to the State of Michigan. (Id. at 19-21.) According to Harder, none of her supervisors were terminated for failing to report the incident and as of the date of the complaint none of the supervisors had reported the incident to the State of Michigan. (Id. at 35-36). Sunrise denies the allegation that Sunrise supervisors failed to report the improper dispensing of the drug. (Ans. 33-35.) Harder alleges that the actual reason for her discharge was Sunrise's fear that Harder would report the incident to the State and Sunrise did not want the State to know of the unauthorized distribution of the drug. (Compl. at 38, 40.)

Harder was then hired by Residential Home Health ("RHH") at an income of $65,000. RHH provides care for patients who are residents of Sunrise. Harder was assigned to RHH's account at Sunrise, the same location where she was terminated. (*Id.* at 66.) Harder claims that Sunrise put numerous restrictions on her work visits to Sunrise including requiring her to check-in when entering the facility and requiring her to meet with the new Executive Director on several occasions. As well, Harder alleges that she was instructed not to visit with her grandmother (a resident of Sunrise) while Harder was working, to refrain from visiting her grandmother in the dining room and to "not dress professionally" while visiting her grandmother in order to avoid confusing the other residents. (Id. at 67

2

-69, 77-78.) Sunrise requested that Harder be removed from the Sunrise account and Harder claims that Sunrise representatives continued to make disparaging statement about her. (Id. at 71-72, 74.) On January 20, 2009 Harder resigned from RHH. She claims she was hampered in generating business for RHH because of her exclusion from the Sunrise's account and Sunrise's ongoing defamatory statements from Sunrise employees. (Id. at 84.)

## LEGAL STANDARD

When reviewing a motion for judgment on the pleadings brought pursuant to Rule 12(c), the Court must take all well-pleaded material allegations of the opposing party as true. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The motion is appropriately granted where no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *Id.* (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The Sixth Circuit has recently confirmed that judgment on the pleadings may be appropriately granted where the facts alleged by the plaintiff fail to meet the specificity requirements of Rule 8(a) as interpreted by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Tucker*, 539 F.3d at 550 (affirming district court's grant of judgment on the pleading where the plaintiff has failed to plead with sufficient specificity her right to relief under the FMLA).

## ANALYSIS

Harder's complaint alleges four claims against the defendant: Count I is a claim of violation of public policy in terminating Harder to prevent her from reporting the improper dispensation of medicine; Count II asserts a claim of wrongful termination; Count III is a defamation claim based upon defendant allegedly claiming Harder exercised "poor judgment," and Count IV is a claim of intentional interference with business relationships.

Defendants have moved for judgment on the pleadings as to all counts of the complaint. For the reasons stated below, the Court will grant judgment on the pleadings as to Counts I, II and III of the complaint, alleging wrongful termination and defamation, but will deny judgment on the pleadings as to Count IV, alleging intentional interference with business relations.

I.    Count I:  Wrongful Termination

The first count of Harder's complaint alleges that Harder was terminated to prevent her from reporting the improper dispensing of drugs by a nurse employed by Sunrise, and her termination was therefore in violation of Michigan public policy.  Count II of the complaint alleges that Sunrise's termination of Harder was in violation of the law of the state of Michigan.

Under Michigan law, there is a presumption that all employment relationships are terminable at will.  *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 694-95 (1982).  Employment is presumed to be terminable at any time for any reason, or for no reason, unless there is a contractual basis for finding otherwise.  *Id.* at 695.  There is, however, a public policy exception to the employment-at-will doctrine, where a discharge is considered to be so contrary to public policy as to be actionable.  *Id.*  A claim of discharge in violation of public policy is actionable if the discharge falls into one of the following three categories: "(1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty, (2) the employee is discharged for the failure or refusal to violate the law in the course of employment, and (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." *Edelberg v. Leco Corp.,* 236 Mich. App. 177, 180, (1999) (*citing Suchodolski*, 412 Mich. at 695-96).  A necessary predicate

4

for establishing a discharge in violation of public policy claim is "the location of some legislative enactment to ground a finding that a discharge is in breach of public policy." *Cushman-Lagerstrom v. Citizens Ins. Co.*, 72 Fed. Appx. 322, 328 (6th Cir. 2003) (quoting *Wiskotoni v. Mich. Nat'l Bank-West*, 716 F.2d 378, 383-83 (6th Cir. 1983)).

Harder asserts that her claim for wrongful termination is based on the second prong identified by the *Suchodolski* court, a termination for failure or refusal to violate the law. Harder's claim that she was fired to prevent her from reporting the nurse's dispensing of the drug to the state of Michigan, however, fails to state a claim for wrongful termination for failure or refusal to violate the law. The complaint alleges that Sunrise terminated Harder to prevent her from reporting the improper dispensing of drugs by Sunrise's nurse, and alleges that Harder's *supervisor's* failure to report the improper dispensing of drugs was a violation of state law. Harder's complaint does not allege facts showing that Harder *herself* refused or failed to violate any specified law and therefore it fails to state a claim for wrongful termination under this prong of the public policy exception. Harder does not allege that she intended to report the incident to the state of Michigan, she does not allege that she informed her supervisors that she intended to file such a report, she does not allege that she *herself* was required by law to report the incident to the state of Michigan, nor does her complaint identify what law is alleged to have been violated by her failure to report the administration of the drug.[1] Because Harder's complaint fails to allege facts showing that she was fired for failing or refusing to violate the law, her complaint fails to state a claim under the second prong of *Suchodolski* for wrongful termination in violation of public policy.

---

[1] Harder failure to cite the statute that imposes the reporting duty hampers the Court in analyzing her claim.

Harder's internal reporting to her supervisors of the nurse's wrongful dispensing of the drug cannot form the basis for a wrongful termination claim in violation of public policy either. A public policy claim under Michigan law cannot be based on internally reporting alleged unlawful conduct to a supervisor. *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617, 640 (E.D. Mich. 2008) (*citing Scott v. Total Renal Care Inc.*, 194 Fed. Appx. 292 (6th Cir. 2006); *Cushman-Lagerstrom*, 72 Fed Appx. 322).

Harder also alleges Sunrise violated its own policy to "Assume the Best Intentions" when it terminated Harder for the incident. This also fails to state a claim for wrongful termination. In *Suchodolsi*, the Michigan Supreme Court held that "[t]he code of ethics of a private association does not establish public policy." *Suchodolski,* 412 Mich. at 696. Harder's claim that Sunrise did not live up to its own motto does not rise to the level of a violation of a legislative act.

Even if Harder was terminated to prevent her from filing a report with the state, there is no authority that holds that such a termination is a violation of the public policy doctrine, and Michigan courts have refused to expand the public policy doctrine beyond the three circumstances identified by the Michigan Supreme Court. *See Edelberg*, 236 Mich. App. at 182 ("We decline to expand *Suchodolski* beyond our Supreme Court's decision").

In summary, the Court holds that the complaint fails to allege facts that support a claim for wrongful termination in violation of public policy and therefore defendants' motion for judgment on the pleadings will be granted as to Count I of the complaint.

II. <u>Wrongful Termination: Michigan Law</u>

Count II of the complaint alleges that Sunrise's termination of Harder was in violation of the law of the state of Michigan. Harder does not specify in either the complaint or her response to the motion for judgment on the pleadings which Michigan law that Sunrise

6

violated, and the Court cannot identify any law that would apply to make Harder's termination illegal, aside from the Whistleblower Protection Act, which both sides agree is inapplicable.

Count II fails to state a claim upon which relief may be granted. The claim that Harder's termination was in "violation of Michigan law" fails to adequately apprise the Court or the defendant of the substance of Harder's claim. The Court will therefore grant defendants' motion for judgment on the pleadings as to Count II of the complaint.

III.     Defamation

Harder's third count is for defamation regarding statements made by Sunrise representatives to various associates of Harder. To prevail on an action for defamation a plaintiff must show that there was: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 474 Mich. 21, 24 (2005) (citations omitted). The elements of a claim of defamation must be specially pleaded, including the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the defamatory words. *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich. App. 74, 77 (1991). A claim for defamation is subject to dismissal where the plaintiff fails to state the substance of the alleged defamatory communication. *Id.* at 77-78.

Plaintiff's complaint alleges four defamatory statements. First, Harder alleges that Sunrise "continue[s] to make disparaging statements regarding Plaintiff to RHH workers who render services at [the Grosse Pointe Woods] facility." Complaint, ¶ 74. Second, Harder alleges that Sunrises "actions are intended to defame the Plaintiff in the healthcare industry

7


in this geographic community." Complaint, ¶ 75. Harder also alleges that her "resignation from her job with RHH was due to ... the defamation of Plaintiff that was ongoing from Defendants' employees." Complaint, ¶ 84. Finally, Harder alleges that "poor judgment" is recorded as the reason for her termination both in Sunrise's records and in her termination notice, and that the statement "poor judgment" is defamatory. Complaint, ¶ 98.

The first three alleged defamatory statements fail to state a claim for defamation because they fail to state the substance of the communications and they fail to state the persons making the statements and the persons to whom the statements were made. A claim for defamation must include facts that support all material elements of the claim, including stating the defamatory words and facts supporting the publication of the defamatory words. *Gonyea*, 192 Mich. App. at 77-78. Because Harder's complaint fails to state the defamatory words and fails to identify the parties to the alleged defamatory communications, the complaint fails to state a claim for defamation as to the communications identified in paragraphs 74, 75 and 84 of the Complaint.

The only defamatory statement that is sufficiently identified in the complaint as to content is the allegation that Sunrise stated in plaintiff's termination notice and in its records that Harder was terminated for "poor judgment." Sunrise argues that Harder cannot sustain a defamation claim as to this statement because the use of the phrase "poor judgment" in Harder's termination notice was both opinion and never published. Sunrise alleges that "poor judgment" is merely an opinion and not a statement of fact.

A defamation claim cannot be brought based upon statements that do not state actual, objectively verifiable facts about a plaintiff. *Milkovich v. Lorain Journal Col*, 497 U.S. at 17-21. In *Ireland v. Edwards*, 230 Mich. App. 607 (1998), the court held that an allegation that a plaintiff was not a "fit mother" was not actionable defamation because "[t]he question

8

whether someone is a 'fit mother,' like the question whether someone is abysmally ignorant, is necessarily subjective." *Ireland*, 230 Mich. App. at 617.  So, too, in the present case the statement that someone displayed "poor judgment" is necessarily subjective.  Whether someone displays good judgment or poor judgment is not susceptible to being provable as false and therefore cannot form the basis for a defamation action.

The defamation action as to the phrase "poor judgment" also fails to state a claim for an additional reason:  there are no facts alleging that the statement was published.  The publication element of defamation action requires that the statement must published to a third party. *Colista v. Thomas*,  241 Mich. App. 529, 538 (2000).  Harder makes no allegations that other people viewed either the termination notice or Sunrise's files. *Compare DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 444 (1997) (holding that when a defamation allegation is actionable when statement were made to a plaintiff's potential employer).

For these reasons, the Court will grant Sunrise's motion for judgment on the pleadings to Count III of the Complaint.

IV.     Intentional Interference with Business Relations

Count IV of the Complaint alleges that Sunrise intentionally interfered with Harder's ability to find comparable employment in the health-care industry.  To state a claim for intentional interference with a business relationship, a plaintiff must establish that there was a valid business relationship, that a defendant knew of the business relationship, that the defendant's intentional interference caused a termination of that business relationship, and resulting damages to the plaintiff. *BPS Clinical Lab. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 698-99 (1996).  To prevail on an intentional interference with business relationship claim, a plaintiff must show that the interference was improper. *Patillo v.*

9

*Equitable Life Assur. Soc. of U.S.,* 199 Mich. App. 450, 457 (1992).  An improper act is one that lacks justification and purposely interferes with the plaintiff's contractual rights or business relationships or expectancy.  *Winiemko v. Valenti*, 203 Mich. App. 411, 418 n.3 (1994).  Improper interference can be shown either by proving the intentional doing of an act wrongful per se or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading the plaintiff's contractual rights or business relationship.  *Patillo*, 199 Mich. App. at 457.  Sunrise claims that Harder cannot establish a prima facie case for tortious interference with a business relationship because she did not allege an intentional act that caused Harder to terminate her relationship with RHH.

The Court finds that the complaint does allege intentional acts sufficient to state a claim for tortious interference with business relationship under Michigan law.  The complaint alleges that Sunrise acted intentionally in restricting Harder's visits to Sunrise, interfered with Harder's ability to serve patients, and ultimately asked RHH to remove Harder as a representative to Sunrise for reasons not related to proper business purposes. (Compl. ¶¶ 67-76).  Harder claims that her removal from the Sunrise account hindered her ability to earn a living and as a result she suffered damages. (Compl. 72-73.)  Harder claims that there is a causal connection with her removal from the Sunrise account and her eventual resignation from RHH.

These facts state a prima facie case for tortious interference with business relationships.  In *Patillo*, 199 Mich. App. at 457, for example, the court held that reasonable minds could differ as to whether an office manager's history of disparaging remarks to the plaintiff created a factual issue as to whether he used his authority improperly to recommend that the plaintiff's employment be terminated and that such allegations created genuine factual issues for purposes of a claim of tortious interference.  *Id.* at 457.  Here,

10

likewise, there appears to be material factual issues as to whether the acts of defendants were improperly motivated for the purposed of interfering with Harder's lawful business relationship with her subsequent employer.

The "intentional and knowing inducement of a party to break his contract with another party is a wrongful act, and actionable as such, *unless* reasonable justification or excuse can be shown." *Greenwald v. Greenwald*, 480 Mich. 1158, 1158 (2008) (quoting *Bahr v. Miller Bros. Creamery*, 365 Mich. 415, 422 (1961) (emphasis in *Greenwald*). Whether Sunrise intentionally and knowingly interfered with Harder's employment with RHH and whether Sunrise's actions were justified are not facts that can be disposed of as a matter of law on a motion for judgment on the pleadings. See *Wilkinson v. Powe*, 300 Mich. 275, 283 (1942) (question of what will constitute justification is usually held to be one for the jury). The Court will therefore deny Sunrise's motion for judgment on the pleadings as to Count IV of the complaint.

### ORDER

For the reasons stated above, defendants' motion for judgment on the pleadings (docket no. 9) is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion is granted as to Count I, Count II and Count III of the Complaint, but denied as to Count IV of the Complaint.

**SO ORDERED**.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: December 22, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 22, 2009, by electronic and/or ordinary mail.

        Alissa Greer
        Case Manager